RAILROAD COMMISSION OF TEXAS
et al., Appellants,

v.

CHICAGO, ROCK ISLAND AND PACIFIC
RAILROAD COMPANY, Appellee.

No. 10401.

Court of Civil Appeals of Texas.

Austin.

May 30, 1956.

John Ben Shepperd, Atty. Gen., William W. Guild, Asst. Atty. Gen., for appellants.

F. B. Walker, Fort Worth, Kenneth Mc-Calla, Austin, for appellee.

ARCHER, Chief Justice.

This suit was instituted by appellee, Chicago, Rock Island and Pacific Railroad, under the Uniform Declaratory Judgments Act, Article 2524–1, Vernon's Civil Statutes, against the appellants, Railroad Commission and Attorney General of Texas. The petition sought a construction of Article 6380, Vernon's Civil Statutes, known as the "Full Crew Law", and an injunction against the appellants State officials.

The trial court held that Article 6380, the Full Crew Law, did not apply to the train operations in issue. Further, that the appellants were enjoined from enforcing the law against the appellee.

The appeal is before this Court on three assignments and are:

"1. The Trial Court erred in holding that the Railroad's Trains Numbers 51 and 52 are not passenger trains within the meaning of Article 6380, V.C.S.

"2. The Trial Court erred in refusing to consider the necessity of having a brakeman on Trains Numbers 51 and 52 for their safe operation.

"3. The Trial Court erred in enjoining the State from enforcing the Full Crew Law against the Railroad."

The points are briefed and presented jointly and we will so consider them.

Essentially the issue involved in this case is whether Article 6380, V.A.C.S., is applicable to the operation by appellee of its Diesel propelled Budd Cars and whether that statute imposes any duty or obligation upon the appellee with respect to who shall man such car in its operation.

Appellee operates two passenger trains or Budd Cars out of and into Amarillo with an engineer and a conductor and contend that such operations are not within the purview of the Full Crew Law so as to require brakemen.

Appellants say that the brakeman is necessary to the safe operation of these trains and that the Full Crew Law requires his presence on them.

The trial court granted appellee an order sustaining the Motion for Declaratory Judgment, holding that Article 6380 has no application to the operation of the Budd Cars, and imposes no obligation to have a brakeman, and that the operation of the

Budd Cars is not the operation of a passenger train. The State was enjoined from enforcing the provisions of Article 6380.

The Railroad Company began the operation of the Budd Car into Amarillo on August 1, 1955, at which time the use of a brakeman was discontinued until August 22, 1955, under threats of penalty suits, when the use of a brakeman was resumed.

The appellee then brought this suit for a Declaratory Judgment with the results as above set out.

There was a stipulation which in part reads:

"The Budd Car employed in the State of Texas in this operation and which the Railroad Company proposed to man with a conductor and an engineer is a Diesel motor car, self-propelled, Diesel powered, within a single unit, with an overall length from coupler to coupler of eighty-five (85) feet, possessing a single passenger unit capable of seating forty-eight (48) passengers, a United States mail compartment and with the engineer's seat and controls at each end of the said car. The Diesel car so employed, popularly known as the 'Budd' Car, was first used and employed in Texas after the year 1930, and was unknown in any railroad operation in Texas before the year 1930. It is similar in construction to the gasoline motor car formerly employed in passenger operations in Texas and differs from such gasoline motor cars in that the fuel employed by such Diesel cars is a low grade of Diesel Oil as against gasoline in motor cars. The said Diesel Cars or so-called Budd Cars are not steam powered and do not depend in any way upon steam for their power, and are not steam propelled trains."

The decree of the trial court is as follows:

"1. 'That Article 6380 of Vernon's Revised Civil Statutes of Texas has no application to plaintiff's Budd Car Operation in and across the State of Texas insofar as the same consists of one Diesel powered car consisting of a single unit, equipped and used for the purpose of carrying passengers and mail, and that said Article imposes no duty upon the plaintiff to man said operation with a brakeman.'

"2. 'It appearing that Article 6380 of Vernon's Revised Civil Statutes of Texas carries penalties for the failure to comply with its provisions and that defendants have threatened the plaintiff with penalty suits for the failure to man its Budd Car Operation across the State of Texas, as above outlined, with a brakeman, and it appearing to the court that said operation is not the operation of a passenger train within the meaning and intendment of the Legislature in the enactment of such Article, the defendants, Attorney General of Texas, John Ben Shepperd, Railroad Commission of Texas, Ernest O. Thompson, William J. Murray, Jr., and Olin Culberson, members of said Railroad Commission of Texas, are each and all hereby perpetually restrained and enjoined from the filing and prosecution of any suits against the plaintiff for the purpose of recovering any penalties for the operation of its Budd Cars as above stated.'"

Article 6380—Full Crew, reads;

"No railroad company or receiver of any railroad company doing business in this State shall run over its road, or part of its road, outside of the yard limits:

"1. Any passenger train with less than a full passenger crew consisting of four persons: one engineer, one fireman, one conductor and one brakeman."

This article was construed by this Court in Railroad Commission of Texas v. Texas & New Orleans R. Co., 42 S.W.2d 1091, 1097, er. ref., and it was determined that it was not applicable to modern gasoline—electric motor cars or trains, carrying passengers over steam railroads.

**798**

There was a further holding that:

"The foregoing quotation finds application here from the fact that appellants insist that the term 'any passenger train,' as used in the Full Crew Law, is broad enough to include motor cars. But the passenger train, as above pointed out, that the Legislature had in mind, was one operated by a full crew of four persons, named and defined as one engineer, one fireman, one conductor, and one brakeman, which necessarily implied a passenger train propelled by a steam locomotive. If the Legislature had in mind a gasoline motor car or train, it could have easily said so, and we believe it would have done so by appropriate language, and in absence of which we will not extend the scope of the act to include motor cars of the character involved in this suit."

The court in the T. & N. O. case went into detail concerning the legislative history of the Full Crew Law and we see no need to restate it. Since the T. & N. O. decision the Legislature has met twelve times and if it had cared to include the single car unit operation it has had ample opportunity.

Then, too, there has been a long continued departmental construction by the Attorney General's office that the law was inapplicable, the first being on June 16, 1908, the next being an opinion on April 2, 1913, the third being dated March 14, 1919, and a fourth opinion dated November 26, 1929.

In 1939 this Court in Missouri-Kansas-Texas R. Co. v. State, 131 S.W.2d 702, 704, er. ref., held:

"[2] We think no good purpose would be served by discussing the issue here presented more at length. The controlling principles involved in the application of this statute were considered and discussed in Railroad Commission of Texas v. Texas & New Orleans R. Co., supra. We think there can be no doubt but that the Legislature never contemplated nor intended that the full crew law should apply to the equipment here involved and as operated on the occasion in question. Nor that it did not constitute a 'construction train', as that term is used in Art. 6380."

Since both the above cited cases received the unqualified refusal of the applications for writs of error, our Supreme Court has approved the language and principles of law declared in the opinions of the Court of Civil Appeals.

In view of the holding in the above cases the subject matter of this case has been determined against appellant's position.

The judgment of the trial court is affirmed.